# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| LATROY FLONN KENNERLY, ) | |
| ) | |
| ) | CIVIL ACTION NO. 3:08-736-CMC-JRM |
| Petitioner, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| STATE OF SOUTH CAROLINA, ) | |
| WARDEN LIEBER ) | |
| CORRECTIONAL INSTITUTION, ) | |
| ) | |
| ) | |
| Respondents. ) | |
| _____) | |

Petitioner, LaTroy Kennerly ("Kennerly"), is an inmate with the South Carolina Department of Corrections, serving a life sentence for murder. On March 4, 2008, Kennerly filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case was automatically referred to the undersigned pursuant to Local Rule 73.02(B)(2)(c) and (e) (D.S.C). Respondent filed a motion for summary judgment on June 16, 2008. An order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was entered on June 19, 2008. Kennerly filed his response to the Respondent's motion on July 18, 2008.

## **Procedural History**

On August 10, 1999 in Orangeburg County, Kennerly shot and killed his girlfriend, Marquita

Dobbins. Kennerly was represented by I.S. Leevy Johnson, Esquire and Byron Gipson, Esquire. He was found guilty in January of 2001. An Anders[1] brief was filed on Kennerly's behalf by the South Carolina Office of Appellate Defense raising the following issue:

> The judge erred by failing to instruct the jury on the lesser-included offense of voluntary manslaughter.

(App. 410).

Kennerly did not file a *pro se* brief. The conviction was affirmed by the South Carolina Court of Appeals. *See* State v. Kennerly, 2003-UP-628 (S.C.Ct.App., Oct. 22, 2003).

Kennerly filed an application for post-conviction relief ("PCR") dated December 3, 2001 (App. 416). An evidentiary hearing was held on August 2, 2004. Kennerly was represented by Virgil Johnson, Esquire. Kennerly and Gipson testified. The PCR court issued an order dismissing the PCR on October 25, 2004. (App. 495).

A Johnson[2] petition for writ of certiorari was filed by the South Carolina Office of Appellate Defense raising the following issue:

> Whether there was any evidence to support the PCR judge's findings that defense counsel was not ineffective in failing to request a charge on voluntary manslaughter?

Kennerly filed a *pro se* brief raising the following issues:

> 1. Counsel representative Mr. Byron Gi[p]son failed to challenge arrest warrant ... which fails to provide a magistrate with a substantial basis for finding probable cause for the offense of murder against appellant Mr. Latroy [Kennerly], depriving him of his 4th (Fourth) Amendment right to the U.S. Constitution and Article I, § 10 of the South Carolina Constitution.
>
> 2. Counsel representative Mr. Byron Gi[p]son failed to secure a preliminary hearing

---

[1] Anders v. California, 386 U.S. 738 (1967).

[2] Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (S.C. 1988).

2

in compliance [with] Rule 2 of the South Carolina Rules of Civil Procedure, which deprived appellant Mr. Latroy [Kennerly] of his 14th Amendment right of the U.S. Constitution and his right of due process.

3. Counsel representative Mr. Byron Gi[p]son's failure to properly impeach witness Ms. LeShae Glover deprives appellant Mr. Latroy [Kennerly] of his U.S.C.A. Constitutional Amendment 6th right to effective assistance of counsel.

4. Counsel representative Mr. Byron Gi[p]son's failure to object to the defective aspects of the trial judge's instruction on reasonable doubt deprives appellant Mr. Latroy [Kennerly] of his right of Due Process under the 14th Amendment of the U.S. Constitution and/or Equal Protection Clause of the said Amendment.

5. Counsel representative Mr. Byron Gi[p]son's failure to object to the instruction on malice deprives appellant Mr. Latroy [Kennerly] of his right of Due Process under the 14th Amendment of the U.S. Constitution and/or Equal Protection Clause of the said Amendment.

6. Counsel representative Mr. Byron Gi[p]son's failure to object to the "burden shifting" charge deprives appellant Mr. Latroy [Kennerly] of his right of Due Process under the 14th Amendment of the U.S. Constitution and/or Equal Protection Clause of the said Amendment.

7. Did the Court lack Subject Matter Jurisdiction to enter a conviction or impose sentence against appellant Mr. Latroy [Kennerly] depriving him of his 5th, 6th, [and] 14th Amendment rights of the U.S. Constitution and his right of Due Process when there was a "procedural defect" in the establishing of indictment number 99-GS-38-1945 for "murder" convened on November 22, 1999.

8. Was the trial court deprived of the right to invoke and/or enact its Subject Matter Judiciary powers due to the indictment's failure to sufficiently apprise the appellant Mr. Latroy [Kennerly] of the time of death in violation of appellant's 5th, 6th, [and] 14th Amendment rights of the U.S. Constitution and the laws of Due Process.

The South Carolina Court of Appeals denied the petition for writ of certiorari on March 23, 2007.

The Remittitur was returned on April 27, 2007.

**Grounds for Relief**

In his present petition Kennerly asserts that he is entitled to a writ of habeas corpus on the following grounds:

3

**GROUND ONE:** Was petitioner's right to the United States Code Annotated Constitutional Amendment Four (4) violated due to an unlawful arrest and seizure of evidence?

**SUPPORTING FACTS:** Arrest of petitioner was made with out a warrant and without probable cause. [Evidence: (See Transcript page 183 to page 192)]. The affidavit in support of the arrest warrant is a "mere conclusory statement" which fails to provide a magistrate with a substantial basis for finding probable cause. [Evidence: (See Arrest Warrant #G197387) dated two days after actual arrest]. A search warrant was not obtained.

**GROUND TWO:** Was petitioner's United States Codes Annotated Constitutional Amendment Fourteen rights and rights of Due Process violated due to a "procedural defect"?

**SUPPORTING FACTS:** Petitioner was arrested on August 12, 1999 and indicted November 22, 1999. [Evidence: (See Indictment #99GS38-1945)]. From the time of arrest to the time of indictment respondent failed to hold preliminary hearing in compliance to rules of criminal procedure. Counsel for petitioner requested a preliminary hearing but justified that the indictment rendered the preliminary hearing null and void. [Evidence: (See Post-Conviction Relief Hearing 01-CP-38-1470 Transcript page 35)]. There is no justification for respondent's failure to adhere to rules of criminal procedure.

**GROUND THREE:** Was subject matter jurisdiction acquired in violation of petitioner's United States Code Annotated Constitutional Amendment Five B and Fourteenth right and right to Due Process at the grand jury proceeding?

**SUPPORTING FACTS:** There is an absence of a transcript on record of a grand jury proceeding. It is this absence of evidence that proves respondents denied petitioner the opportunity,

4

> among other things, " to make a challenge to a limitation of the evidence of the mental state required for a crime to have been committed." This denial of due process is especially relevant where there is a question involving the establishment of probable cause and a failure to have a preliminary hearing.

## **Discussion**

Respondents assert that Kennerly has failed to properly exhaust his claims because he failed to present them to the South Carolina appellate courts for review.

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1.   **Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>> (A)  the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)(i)  there is either an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

5

> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. See O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. See SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). See S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See, S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. Simmons v. State,

264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts.  A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[3]  Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely.  Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims.  See Rose v. Lundy, supra.

    **2.**    **Procedural Bypass[4]**

---

[3]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances.  See discussion below on procedural bypass.

[4]This concept is sometimes referred to as procedural bar or procedural default.  If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in
(continued...)

7

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, supra, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); see also Engle v. Isaac,

---

[4](...continued)
this court.

456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3.    Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4.    Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocense.

9

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), cert. denied, 485 U.S. 1000 (1988). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocense" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocense. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocense as to his guilt, Id., or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5.     Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and prejudice or actual innocense. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

After denial of the PCR, appellate counsel filed a Johnson petition for writ of certiorari[5] with the South Carolina Supreme Court. In Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988), the South Carolina Supreme Court adopted a procedure for appeal where appellate counsel concludes that the PCR applicant has no meritorious grounds to present. Counsel is required to file the Johnson petition raising any issue which is arguably appealable and requesting leave to withdraw as attorney for the petitioner on appeal. A copy of the brief is furnished to the applicant and he is notified that he has a specific period of time to furnish further information to the Supreme Court for consideration in making a determination as to the Johnson petition. The applicant may file a pro se brief raising additional issues. Foster v. State, 298 S.C. 306, 379 S.E.2d 907 (1989). In ruling on a Johnson petition for writ of certiorari, the South Carolina Supreme Court necessarily considers the issue or issues raised in the Johnson petition and any issues raised by the applicant in his pro se brief. Further, the South Carolina Supreme Court conducts a review of the record when a Johnson petition is filed. King v. State, 308 S.C. 348, 417 S.E.2d 868 (1992). In so doing, the South Carolina Supreme Court will only consider those issues raised by the PCR application upon which evidence was presented **and** were ruled on by the PCR court. The South Carolina Supreme Court applies a

---

[5] All appeals from the denial of a PCR application are made by seeking a writ of certiorari from the South Carolina Supreme Court. See SCACR 227.

procedural bar to issues which do not meet this criteria. Under South Carolina law, the PCR court is required to make specific findings of fact and conclusions of law as to each issue raised in the PCR. See S.C. Code Ann. § 17-27-80 and Rule 52(a) SCRCP. Bryson v. State, 328 S.C. 236, 493 S.E.2d 500 (1997). Counsel is required to object to any deficiencies in the order of the PCR court. McCullough v. State, 320 S.C. 270, 464 S.E.2d 340 (1995). This duty falls on the PCR applicant if not raised by counsel in the Johnson petition. See Pruitt v. State, 310 S.C. 254, 423 S.E.2d 127, 128 n.2 (1992) ("the general rule [is] that issues must be raised to, and ruled on by, the post-conviction judge to be preserved for appellate review."). See also, Padgett v. State, 324 S.C. 22, 484 S.E.2d 101 (1997) (issues not ruled on by PCR court are not preserved for appeal). Thus, when considering a Johnson petition, the South Carolina Supreme Court considers only those issues raised by the Johnson petition, raised in any pro se brief or petition filed by the applicant, and those issues specifically ruled on by the PCR court.

The only issued raised on direct appeal was whether the trial court erred in failing to charge the jury on the lesser included offense of voluntary manslaughter. (App. 410). The PCR court addressed the issue as one of ineffective assistance of counsel for failure to request a charge of voluntary manslaughter. However, no ground concerning the failure to charge voluntary manslaughter is contained in the present petition. Therefore, if Kennerly has exhausted his grounds for relief it is through the PCR appellate process.

The first three grounds for relief in the present petition are issues which Kennerly could have raised on direct appeal, but failed to do so. Further grounds one and two in the present petition were raised as claims as ineffective assistance of counsel in the PCR application and rejected on that theory by the PCR court. Kennerly asserted these issues as ineffective assistance of counsel in his

12

*pro se* petition for writ of certiorari to the South Carolina Supreme Court. Thus, grounds one and two in the present petition have never been "fairly presented" to the South Carolina Supreme Court and are procedurally barred.

The PCR court addressed Kennerly's claim that the trial court did not have subject matter jurisdiction of his case based solely on a claim of insufficiency of the indictment. (App. 500). In his present petition (Ground Three), Kennerly for the first time argues that the court lacked subject matter jurisdiction because there was no transcript of the grand jury proceeding. Kennerly presented no evidence or argument on this theory in the PCR proceedings and it was not considered by the PCR court. Further, he did not raise this specific claim in his *pro se* petition for writ of certiorari. His arguments relating to the alleged lack of subject matter jurisdiction concerned a delay in presenting the indictment to the grand jury and the sufficiency of the indictment. The undersigned concludes that Ground Three of the present petition was never "fairly presented" to the South Carolina courts and it is procedurally barred.

Kennerly alleges that his trial attorney, Byron Gipson, was ineffective because he did not properly impeach one of the State's witnesses, LeShae Glover, on cross-examination. This issue was raised during the PCR hearing, and both Kennerly (App. 437; 454-456) and Gipson (App. 474; 478-479) testified about Glover's cross-examination. The PCR court addressed the issue only with respect to Gipson's failure to impeach Glover concerning her testimony that it was Kennerly's voice on a tape of a telephone call to the 911 operator immediately following the shooting. (App.500).

Kennerly raises a different issue concerning Glover's testimony in his present petition, i.e., that Glover gave a statement to the police which was inconsistent with her trial testimony. Even though the issue was raised in Kennerly's *pro se* petition for writ of certiorari, it is procedurally

13

barred because it was not addressed by the PCR court and no motion was made to require the PCR court to address it.

In any event, Kennerly cannot show that Gipson was ineffective in failing to "properly" cross-examine Glover.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court

14

> must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. See Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

There is a "strong presumption" that trial counsel's "conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. at 689. Inadequate cross-examination will rarely be the basis for a finding of ineffective assistance of counsel. Courts recognize that "most attorneys make some mistakes during cross-examination." Hunt v. Nuth, 57 F.3d 1327, 1333, n.4 (4th Cir. 1995), *cert. denied*, 516 U.S. 1054 (1996). In Hunt, the prisoner presented experts at his PCR hearing to criticize trial counsel's cross-examination. The Fourth Circuit accepted the PCR court's finding that the experts' criticisms "constitute a grading of the quality of counsel's cross-examination. None of the suggested errors or omissions are of such a magnitude as to place the conduct outside of prevailing professional norms." Id.

The record shows that Gipson used the prior written statement to cross-examine and impeach Glover. (App. 140-144). Kennerly appears to argue that Gipson violated the South Carolina Rules of Evidence because he had the statement marked as an exhibit for identification. (App. 141).

Kennerly appears to believe that Gipson entered the statement into evidence in violation of the rules of evidence when it was marked for identification. His belief is not accurate.

## Conclusion

Based on a review of the record, it is recommended that Respondents' motion be **granted** and the petition **dismissed**, without an evidentiary hearing.



Joseph R. McCrorey
United States Magistrate Judge

Columbia, South Carolina

December 4, 2008

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

17